■ Robert E. O'Connor, Respondent, v Timothy M. Demarest et al., Appellants, et al., Defendants. [720 NYS2d 648] —Cardona, P. J. Appeal from a judgment of the Supreme Court (Cobb, J.), entered January 31, 2000 in Columbia County, which, *inter alia*, granted plaintiff's motion for summary judgment and made a declaration in his favor.

This appeal involves a dispute over a right-of-way appearing in plaintiff's deed which he claims runs across certain property owned by defendants Timothy M. Demarest and Maiike Demarest Kuen (hereinafter the Demarests) located in the Town of Ancram, Columbia County. In 1960, defendants James D. Craig and T. Roger Craig (hereinafter the Craigs), common grantors of the properties acquired by the parties to this action, purchased 340 acres of land along East Ancram Road and Old Town Road in the Town of Ancram. In 1984, the Craigs submitted a proposal to the Town Planning Board to subdivide the property into five lots, known as Woodwind Farms, consisting of a 30.322-acre parcel, a 5.11-acre parcel, a 15.901-acre

parcel, a 28.434-acre parcel and a remaining parcel of approximately 262 acres to be retained by the Craigs. Two subdivision maps were apparently submitted by the Craigs in connection with their application. One map depicted a private road (hereinafter referred to as the eastern road) abutting the eastern side of the 28.434-acre parcel and running across the 30.322-acre parcel, the 5.11-acre parcel, the 15.901-acre parcel and a portion of the remaining 262-acre parcel retained by the Craigs ultimately connecting to the north fork of Old Town Road. A second map depicted the eastern road as well as another private road (hereinafter referred to as the western road), added by handwritten notation, running from the middle of the northern boundary of the 28.434-acre parcel across a portion of the parcel retained by the Craigs and connecting to the south fork of Old Town Road leading to East Ancram Road.

Following approval of the subdivision plan, the Craigs deeded the lots to various purchasers. In July 1985, the Craigs conveyed the 28.434-acre parcel, which did not front a public road, to plaintiff. In September 1985, the Craigs conveyed the 30.322-acre parcel to defendants Robert Bunim and Mary Ellis Bunim (hereinafter the Bunims). The 15.901-acre and 5.11-acre parcels, located contiguous to the Bunims' parcel, were conveyed by the Craigs to other purchasers in September 1985 and August 1989, respectively, but were ultimately transferred to the Demarests in November 1995.

After obtaining title to their parcels, the Demarests erected a barrier consisting of chains, boulders, a diesel fuel tank and other debris, across that portion of the eastern road which traversed their property thereby blocking plaintiff's access to his parcel. As a result, plaintiff commenced this action pursuant to RPAPL article 15 seeking, *inter alia*, a declaration that he had a right to use the eastern road for ingress and egress to his property. Following joinder of issue, the Bunims and the Craigs entered into an agreement with plaintiff granting him a right-of-way along the eastern road over their properties. Thereafter, plaintiff and the Demarests each moved for summary judgment. Supreme Court, *inter alia*, granted plaintiff's motion concluding that he had acquired an easement by implication over the eastern road based upon his deed description and prior usage. This appeal by the Demarests ensued.

Initially, we note that whether an implied easement by grant has been created depends upon the intention of the grantor at the time of the original conveyance (*see, Palma v Mastroianni*, 276 AD2d 894; *B.J. 96 Corp. v Mester*, 222 AD2d 798, 799; *Oliphant v McCarthy*, 208 AD2d 1079, 1080). The grantor's

intention must be gleaned from the surrounding circumstances taking into consideration, among other things, the language of the deed and the appearance of any subdivision map of the property (*see, Palma v Mastroianni, supra,* at 894-895; *B.J. 96 Corp. v Mester, supra,* at 799). To establish an easement by implication based upon prior usage, it must be shown that "(1) there was a unity and subsequent separation of title, (2) the claimed easement must have, prior to separation, been so long continued and obvious as to show that it was meant to be permanent, and (3) the use must be necessary to the beneficial enjoyment of the land" (*Pickett v Whipple,* 216 AD2d 833, 834-835; *see, Balboaa Land Dev. v Morris,* 201 AD2d 850, 851). It is the plaintiff who bears the burden of establishing the facts supporting an implied easement (*see, Palma v Mastroianni, supra,* at 895; *Balboaa Land Dev. v Morris, supra,* at 851).

While plaintiff's deed specifically referenced a right-of-way, it did not identify it in clear terms. The deed description provided, in relevant part, that the 28.434-acre parcel was conveyed to plaintiff: "Together with a right-of-way for all purposes of ingress and egress in common with the grantors, their heirs and assigns from East Ancram Road over a private road which road is contiguous to the parcel being conveyed herein starting at the northwest corner of the parcel being conveyed herein. Said private road shall be 15 feet on each side of the center thereof for all portions of the road which run through the lands of the grantors herein." In his motion for summary judgment, plaintiff asserted that the eastern road is the right-of-way referred to in the aforesaid description. To substantiate his claim, he pointed to a subdivision map of Woodwind Farms prepared by Raymond Lubianetsky approved by the Town on December 13, 1984 which depicts only the eastern road. He also relied upon a survey map prepared by Jeffrey Plass on November 24, 1994 concerning the proposed conveyance of a 30-acre parcel by the Craigs to the Demarests, that was never completed, which depicts the eastern road as the only means of access to plaintiff's property. Likewise, plaintiff referred to a survey map of the 5.11-acre and 15.901-acre parcels ultimately purchased by the Demarests prepared by Plass on July 10, 1996, which shows the eastern road running across their property.

Plaintiff further pointed to prior litigation, *Gilmore v Craig* (Sup Ct, Columbia County, June 28, 1995, Cobb, J. [hereinafter referred to as the *Gilmore* case]), in which it was held that he and other property owners had a prescriptive right to use the north fork of Old Town Road for ingress and egress to their

respective properties, which is meaningful to plaintiff only insofar as it facilitated his use of the eastern road. He noted that, prior to the conclusion of the *Gilmore* case, the Craigs conveyed the 5.11-acre and 15.901-acre parcels to the Demarests and, in their deed, granted them two rights-of-way, the first providing access over the eastern road and the second, designated a "contingent" right-of-way, providing access over the western road in the event of an adverse outcome in the *Gilmore* case. In addition to the foregoing proof, plaintiff submitted his own affidavit in which he averred that, since he began hunting on the property in 1974 and continuing after his purchase in 1985, he always accessed it via the eastern road and no one had ever attempted to interfere with his use until the Demarests erected a barrier in 1995. He indicated that James Craig (hereinafter referred to as Don Craig) represented to him that the only way he could access the property was by using the north fork of Old Town Road connecting to the eastern road. According to plaintiff, the western road, which traverses only the Craigs' property, is much too steep for use as a viable means of accessing his property.

Plaintiff also submitted the affidavit of Arthur Bowalick, the caretaker of the Craigs' property from 1972 until 1992. Bowalick stated that he regularly used the eastern road when he would hunt on plaintiff's property and that it was the only way to get there. He indicated that he mowed and cleared the eastern road well into the 1980s and that it was clearly observable. According to Bowalick, the Demarests used the eastern road to access their property until they constructed a driveway from East Ancram Road.

In their cross motion, the Demarests contended that the right-of-way described in plaintiff's deed is the western road which runs exclusively over property retained by the Craigs. In support of their claim, they referred to a subdivision map of Woodwind Farms prepared by Lubianetsky on October 15, 1982 which shows the eastern road but further depicts, by a bold handwritten line, the western road leading from plaintiff's property through the Craigs' land to East Ancram Road. The Demarests submitted the affidavit of Joan Taylor, a member of the Town Planning Board at the time of the Craigs' subdivision application, who averred that Don Craig represented to the Board that he intended to construct a road along the western road which would provide access from East Ancram Road to the lots to be subdivided, including plaintiff's lot. She noted that while subdivision approval was conditioned upon the construction of the access road, this condition was not noted on

the map nor in any other writing. According to Taylor, Don Craig never mentioned that access to the subdivision would be via the north fork of Old Town Road to the eastern road.

The Demarests also relied upon a survey map prepared by Lubianetsky on February 23, 1983 of a 21.43-acre portion of the Craigs' property proposed to be conveyed to Susan Craig, but never effectuated, which delineates the western road connecting to the south fork of Old Town Road leading to East Ancram Road as the sole means of access. They also pointed to the contract of sale between plaintiff and the Craigs wherein the Craigs agreed to construct an improved road along the western road providing access from plaintiff's property to East Ancram Road. They further submitted the affidavit of Philip Massaro, a surveyor who physically inspected the western road and, on October 22, 1990, prepared a map of a proposed access road leading from plaintiff's property over the Craigs' land to East Ancram Road. Massaro opined that the right-of-way referred to in plaintiff's deed corresponded with the western road along which he mapped the access road. Furthermore, the Demarests relied upon a stipulation entered between the Craigs and plaintiff in the *Gilmore* case in which the Craigs, *inter alia*, agreed to construct the improved access road described in the parties' contract of sale in the event of an adverse judgment in the *Gilmore* case.

In addition to the foregoing proof, Timothy Demarest submitted his own affidavit in which he averred that Don Craig never disclosed that plaintiff had a right-of-way over his property. He stated that he was denied a building permit because there was no recognized road from the north fork of Old Town Road to his property and, therefore, he had to build a driveway connecting to the south fork of Old Town Road. He indicated that plaintiff told him that he could not get a building permit for his property unless the Craigs constructed an improved road along the western road. According to Timothy Demarest, the eastern road was nothing more than a rutted path virtually indistinguishable from its surroundings. Likewise, Massaro stated in his affidavit that the eastern road was barely discernable consisting of little more than tire ruts in a dirt and grass surface. He noted that the western road, on the other hand, had a traveled surface of approximately eight feet with rutted wheel tracks revealing that it had been used for a long time. He indicated that the distance from plaintiff's property along the western road to East Ancram Road was approximately 1,750 feet while the distance from plaintiff's property along the eastern road to East Ancram Road was approximately 6,400 feet.

Furthermore, the Demarests submitted the affidavit of James Butrick, a zoning enforcement officer for the Town, who indicated that the subdivision map of Woodwind Farms had never been formally filed with the County Clerk and was, therefore, void. He noted that plaintiff's applications for building permits were denied in 1990 and 1996 due to the absence of a formal means of ingress and egress to his property. He stated that he drove on the western road in 1991 and found it passable indicating that, if the western road were improved, it would be sufficient for plaintiff to obtain a building permit. He also stated that he had traveled along the eastern road which he described as not very well defined consisting mainly of vehicle tracks.

As noted above, the language of plaintiff's deed does not clearly set forth the location of the right-of-way referred to therein. The extrinsic evidence submitted by the parties to ascertain the grantor's intent in this regard is severely conflicting. The right-of-way referenced in plaintiff's deed is described in identical fashion in the deeds of other parties even though its location differs in relationship to each parcel. Some maps depict the eastern road, some the western road and others both roads, without any apparent explanation for the inconsistency. There is conflicting testimony concerning Don Craig's representations to the various purchasers as to which lots were subject to the rights of others. Consequently, we are of the view that questions of fact exist as to whether plaintiff is entitled to an easement by implication arising by grant.

Likewise, there is inconsistent evidence concerning the extent to which the eastern and western roads were used and their respective conditions. It is also unclear, based upon this record, whether the eastern road was, in fact, necessary to the beneficial use of plaintiff's property. In view of this, we also find that questions of fact exist as to whether plaintiff is entitled to an easement by implication arising from prior usage. Therefore, plaintiff's motion should have been denied.

Mercure, Spain, Carpinello and Rose, JJ., concur. Ordered that the judgment is modified, on the law, with costs, by reversing so much thereof as granted plaintiff's motion for summary judgment; said motion denied; and, as so modified, affirmed.